IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LANCE E. MASON,

    *Plaintiff,*

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    *Defendant.*

Case No. 17-1133-EFM

**MEMORANDUM AND ORDER**

Plaintiff Lance E. Mason seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("the Act"). Mason alleges that the administrative law judge ("ALJ") erred in formulating his residual functional capacity ("RFC"). Concluding that substantial evidence supports the ALJ's decision, the Court affirms the decision of the Commissioner.

    **I.    Factual and Procedural Background**

Mason was 36 years old on his alleged disability onset date, August 6, 2012. He has a high school education and completed a year and a half of college. He previously worked as a janitor, a stock clerk, a roofer helper, a highway maintenance worker, a lumper, and a hostler. At the time of his hearing before the ALJ, Mason had been working part time for six months taking trucks

from a warehouse to refuel them. This work did not rise to the level of "substantial gainful activity," which would have mandated a finding that Mason was not disabled.

Mason's relevant medical history dates to July of 2004, when he was diagnosed with alcohol dependence, cannabis abuse, and personality disorder with antisocial traits following his second DUI arrest. With treatment, his mental health improved significantly. In December of 2012, the middle finger of his left hand—his dominant hand—was amputated after he injured it in a saw accident.

Mason applied for disability insurance benefits and supplemental security income on June 30, 2014. On February 9, 2016, he attended a hearing before ALJ Rhonda Greenberg. At the hearing, the ALJ and Mason's counsel posed hypotheticals to a vocational expert ("VE"), asking him if an individual with Mason's age, education, and work experience could find work despite a proposed list of physical and mental impairments.

The ALJ issued a decision on May 18, 2016, finding Mason not disabled. In her decision, the ALJ assessed Mason's RFC, concluding that he can perform light work,[1] except that he "can only occasionally climb ladders, ropes, or scaffolding; occasionally fingering and feeling with the left dominant hand; can perform simple, unskilled, repetitive work; cannot perform teamwork or work in tandem with coworkers; no contact with the general public."[2] After finding that Mason could not perform any of his past work, the ALJ found that there were jobs in the national economy

---

[1] "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

[2] Doc. 10, p. 19.

that Mason could perform, including cleaner, racker, and collator. Accordingly, she found that he was not disabled.

## II. Legal Standard

Judicial review of the Commissioner's decision is guided by the Act, which provides that the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.[3] The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[4] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[5] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[6]

An individual is under a disability only if he can "establish that [he] has a physical or mental impairment which prevents [him] from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[7] This impairment "must be severe enough that [he] is unable to perform [his] past relevant work, and

---

[3] 42 U.S.C. § 405(g).

[4] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[5] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[6] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[7] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

further cannot engage in other substantial gainful work existing in the national economy, considering [his] age, education, and work experience."[8]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[9] The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[10]

The first three steps of the sequential evaluation require the ALJ to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[11] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from [his] impairments."[12]

After assessing the claimant's RFC, the ALJ continues to steps four and five, which require the ALJ to determine whether the claimant can perform his past relevant work, and if not, then whether he can generally perform other work that exists in the national economy.[13] The claimant

---

[8] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

[9] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).

[10] *Barkley*, 2010 WL 3001753, at *2.

[11] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[12] *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[13] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[14]  The burden then shifts to the Commissioner at step five to show that, despite his alleged impairments, the claimant can perform other work in the national economy.[15]

### III.     Analysis

Mason's argument centers on the ALJ's treatment of the medical opinion evidence from Dr. Michael Schwartz.  Mason argues that the ALJ failed to incorporate into her RFC determination Dr. Schwartz's assessment that Mason has a moderate impairment in his ability to respond appropriately to changes in a routine work setting.  If the ALJ had done so, Mason argues, the VE would have testified at the hearing that there were no jobs in the national or local economy that Mason could perform.  The Commissioner counters that the ALJ did properly incorporate Dr. Schwartz's opinion into her RFC, by limiting Mason to simple, unskilled, repetitive work, with no teamwork or working in tandem with coworkers and no contact with the general public.  The Court agrees with the Commissioner.

Dr. Schwartz examined Mason on March 24, 2016.  He determined that Mason has slight impairments in his ability to understand, remember, and carry out short, simple instructions, and moderate impairments in his ability to: understand, remember, and carry out detailed instructions; make judgements on simple work-related decisions; interact appropriately with the public, supervisors, and co-workers; and respond appropriately to work pressures and changes in a usual,

---

[14] *Lax*, 489 F.3d at 1084.

[15] *Id.*

routine work setting. Dr. Schwartz ultimately concluded, however, that Mason did not have any cognitive, memory, or emotional problems which would prevent him from working.[16]

The 10th Circuit has held that an ALJ "can account for moderate limitations by limiting the claimant to particular kinds of work activity."[17] In *Smith*, an evaluating doctor assessed the claimant with a variety of moderate impairments, including the ability to respond appropriately to changes in the workplace. She concluded that the claimant could engage in work that was limited in complexity and manage social interactions that were not frequent or prolonged. The ALJ in that case determined that the claimant could not engage in face-to-face contact with the public and could engage in only simple, repetitive, and routine tasks. The court held that the ALJ did not err by not specifically including each moderate impairment in the claimant's RFC when that RFC tracked the doctor's conclusions.

The ALJ in this case did not err either. While Dr. Schwartz noted several moderate impairments, he concluded that Mason has some difficulty interacting with others and with his processing speed, but that he has been doing fine in his job refueling trucks. Dr. Schwartz stated that Mason did not have "any cognitive, memory, or emotional problems which would prevent his working."[18] Similarly, two other State agency psychological consultants, Dr. Robert Blum and Dr. Kevin Donovan, both found that Mason has a moderate impairment in his ability to respond appropriately to changes in the work setting, but then did not specifically mention that impairment

---

[16] Dr. Schwartz filled out two forms on Mason after examining him. The first (Doc. 10, p. 690-97) contained the ultimate conclusion relied upon by the ALJ. The second (Doc. 10, p. 698-702) contained the notation of a moderate impairment in the ability to adapt to changes, upon which Mason bases his argument. Dr. Schwartz completed the forms at approximately the same time, so the Court will consider them together as one opinion.

[17] *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)).

[18] Doc. 10, p. 695.

in their narrative descriptions of Mason's mental RFC.  The ALJ, Dr. Schwartz, Dr. Blum, and Dr. Donovan all agreed that Mason was capable of simple, unskilled work, and that it would be better for him to avoid contact with other people.

Mason then points to the work activities questionnaire completed by Mason's supervisor, Bob Cook.  Mason claims that Cook noted several deficiencies that show that Mason is limited in his ability to respond to changes in a routine work setting.  But Mason completely ignores the fact that Cook stated that Mason has no problems dealing with changes.  In fact, Cook noted that the job involved frequent changes and Mason never had any problem with adjusting to them.

Mason finally argues that the Court should remand because the VE testified that there would be no work available to an individual with Mason's RFC and other characteristics who also "would be unable to consistently handle routine changes in the work setting because of their anxiety and frustration."[19]  While the VE did say that an individual would have to "at least handle the routine changes to be able to perform unskilled work,"[20] this hypothetical does not apply to Mason. The three psychological consultants stated that Mason was moderately impaired in his ability to adapt to changes.  A "moderate" impairment, according to the form filled out by Dr. Schwartz, means that there is a "moderate limitation in this area but the individual is still able to function satisfactorily."[21]  So while "a moderate impairment is not the same as no impairment at all,"[22] it is also not the same as a complete inability to consistently handle routine changes.[23]

---

[19] Doc. 10, p. 53.

[20] *Id.*

[21] Doc. 10, p. 700.

[22] *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

[23] The Court notes that there may also be more than a difference in semantics between "changes to the routine work setting," which was on the forms filled out by the psychological consultants, and "routine changes in the work

The hypothetical posed to the VE by the ALJ adequately reflected Mason's impairments. It contained Mason's RFC, which the ALJ formulated almost directly from the narrative assessments from all three psychological consultants. Dr. Blum, Dr. Donovan, and Dr. Schwartz all noted that Mason had a moderate impairment in his ability to adapt to changes, and all three concluded that he should be limited to simple, unskilled work with limited contact with other people. Any impairment in Mason's ability to adapt to changes was clearly incorporated into their conclusions. The ALJ did not err by not including a limitation in Mason's RFC specifically corresponding to a moderate impairment in his ability to adapt to changes in the routine work setting. Her conclusion that he could perform simple, unskilled, repetitive work, with no teamwork, working in tandem with coworkers, or contact with the general public, sufficiently encapsulated the opinions of the expert psychological consultants.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 23rd day of May, 2018.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

setting," which was how Mason's counsel phrased the hypothetical to the VE. The first suggests unexpected changes, while the second suggests changes that are built into the job itself.